50 CCPA

### Application of John PAVLECKA.

### Patent Appeal No. 6971.

United States Court of Customs and Patent Appeals.

June 20, 1963.

James E. Siegel, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals which affirmed the examiner's rejection of thirty-one claims in appellant's application,[1] Serial No. 301,010, for a patent for "Interlocked Panel Structure." Five claims stand withdrawn from consideration under the provisions of Rule 142(b) of the Patent Office.[2]

Appellant's application relates to a construction wherein a plurality of panels are fastened together to form a hollow wall by means of slidable keys engaging "stringers" secured to the inner surfaces of spaced opposing panels. Alternatively, the stringers on opposing panels may each be fastened by a separate key to one of opposite faces of a structural member disposed between the panels. The engaging faces of the stringers, keys and structural members are provided with matching mortise-and-tenon formations. The ends of the panels are equip-

---

1. Filed July 26, 1952.

2. Rule 142(b) reads as follows:
142. "Requirement for restriction
&ast; &ast; &ast; &ast; &ast;
"(b) Claims to the invention or inven-

tions not elected, if not canceled, are nevertheless withdrawn from further consideration by the examiner by the election, subject however to reinstatement in the event the requirement for restriction is withdrawn or overruled."

ped with half stringers which, when the ends of two panels abut, form the equivalent of a full stringer and provide a formation which can be secured by a key to two similar half stringers or to a full or intermediate stringer on opposed panels. Two adjacent half stringers can be secured together independently by a separate key sliding into formations on their adjacent sides or by cooperating dual mortise-and-tenon formations on the engaging longitudinal surfaces of the stringers and the key. Examples of the constructions are illustrated in Figs. 1, 3 and 5 of appellant's application reproduced below:

The application discloses numerous modifications of appellant's construction. For example, some figures of the drawing illustrate longitudinal and lateral keys of different shapes as well as more extensive wall portions including right-angle or corner arrangements and T-shape intersections of hollow walls.

Three grounds of rejection are involved in the appeal. Claims 8, 12, 19, 21, 50, 51, 57, 58, 59, 61, 65, 66, 67, 68, 69, 72, 73, 74, 83, 84 and 85 stand rejected as obvious over the prior art, the following references being relied on:

Vordtriede     650,919    June   5, 1900.
London      2,164,138   June 27, 1939.

Claims 21, 50, 51, 57, 58, 59, 61, 69, 72, 73, 83, 84 and 85 are additionally rejected as indefinite. A group of claims consisting of 20, 36, 38, 39, 40, 41, 42, 43, 44 and 48 stand rejected only on the ground they do not read on the elected species, no action having been taken on their merits.

The London patent relates to a hollow wall construction made up of opposing panels joined together by inwardly extending stringers embodying flexible mortise-and-tenon formations which are joined together by a pushing action which snaps opposing formations into engagement. Fig. 4 of that patent, relied on in the art rejection, is reproduced below:

Vordtriede shows an arrangement wherein building bricks are held against lateral separation by tenoned keys which engage vertical mortises formed in the bricks. The keys may be of cruciform shape. When the bricks are arranged in contiguous double rows, the mortises are formed in the corners of four adjoining bricks. Where a corner or T-intersection is made, a double mortise may be provided in a single brick at an intermediate location along the edge of the brick where the corners of two adjacent bricks disposed perpendicularly thereto meet. Vordtriede also discloses an arrangement where spacing is provided between the two rows of bricks by using a key of elongated cross-section. That form is illustrated in the horizontal or plan view of Fig. 4, reproduced below:

Fig. 4.

Claims 8, 20 and 51 are representative and read:

"8. In a structure, two panels meeting with each other at a parting line, a number of structural members extending at a distance from said panels along said parting line, said number of structural members having longitudinal reentrant mortises running therein and open toward said panels, juxtaposed stringers extending on said panels at and along said parting line and reaching to said number of structural members therefrom, said stringers having longitudinal reentrant mortises running therein in registry with said structural member mortises, dual tenon splines telescoped into engagement with said structural member and stringer mortises in registry, and laterally engaging means locking said juxtaposed stringers to each other against separation of said panels thereof at said parting line.

"20. A structure including, a number of panel units meeting at parting lines in spaced facing rows and forming straight walls and L- and T-intersections therein, stringers extending on said panel units in juxtaposition to one another at and along said parting lines, stringers extending on said panel units at intervals apart from said parting lines, certain of said parting lines being located at said intersections and others in said straight walls, said stringers in juxtaposition and said intermediate stringers on each panel unit row being in random opposed alinement with stringers in juxtaposition and with intermediate stringers on a facing panel unit row and with stringers on two rows facing each other at said T-intersections, certain of said intermediate stringers at said intersections and apart therefrom bearing a number of longitudinal reentrant mortises open away from said panel units, others of said intermediate stringers and all of said stringers in juxtaposition bearing each one half the number of longitudinal reentrant mortises as one of said intermediate stringers, said mortises in said opposedly alined intermediate stringers in juxtaposition on facing rows of panel units and at said intersections being in registry with one another, dual tenon splines telescoped into engagement with said stringer mortises in registry, laterally engaging means for locking said stringers in juxtaposition to each other and thereby holding said panel units together at said parting lines, and sealing strips confined between said stringers locked in juxtaposition at said panel unit parting lines.

"51. In a structure, two panels meeting with each other at a parting line, two other panels meeting with each other at a parting line coextensive with and distanced from said first parting line, juxtaposed wall means extending on each two of said

meeting panels at and along said parting line therein, said wall means reaching from said panels into opposition with one another and having frontal faces in contiguity with one another, a spline or splines in said faces interlocking said wall means in opposition with one another, and laterally engaging means for locking said juxtaposed wall means on each two of said panels to each other and thereby holding said meeting panels together at said parting line."

The examiner based the prior art rejection on London in view of Vordtriede. Concerning that rejection, the board stated:

" * * *, it is the Examiner's position that persons of ordinary skill in the art would find it obvious to fabricate connectable panel structures having face elements and projecting structural parts in abutted relation held together by a unitary key. The use of panels and projecting abutted members with connections is found in London. Substitution of a slidable key to interlock with grooves is found in Vordtriede at 5 and 5' and considered by the Examiner to render obvious the needed modification of the London structure.

* * * * * *

"In considering the numerous claims rejected as unpatentable over London in view of Vordtriede, we have had considerable difficulty in determining the significance and scope of the various phrasings therein as read in connection with appellant's disclosure. Orderly procedure in the examination of applications provides for the restriction of issues to claims readable on a single species for purposes of determining allowable subject matter. In this case such restriction was complied with and 'The species illustrated in the right half of Fig. 5' was determined as the subject matter for evaluation in reaching the appealed issues. * * * In the present record we can reach no

other conclusion than that claims as noted in the art rejection are considered as readable on the 'species' of Figure 5. In substantiating this view it is evident that the terminology employed to define the panels with meeting projecting stringer elements, and connecting spline parts, is in numerous ways devious and without clear basis in 'exact terms' in either the specification or appellant's brief and reply brief. We, however, have read these claims as finding their essential 'species' substance in the form of building element joint presented in Figure 5.

"From London and Vordtriede, we are convinced that persons of ordinary skill in the art would find it obvious to fabricate a building construction with spaced panel areas held in such spaced relation by shouldered projections in abutment, which abutting elements are locked by a slidable key. Whether Vordtriede be considered as modified to provide a hollow wall construction between attaching areas, or whether London be considered as modified by a substituted locking system appears to be optional. We do not agree with appellant that these locking systems are incompatible, or that the locking of an assembly by movement of a simple key is foreign thereto. This feature is fully present in Vordtriede and use of his locking principles with a 'hollow' wall construction amounts to no more than a substitution of such locks with their advantages, for the locks of London. The Maltese cross type of key shown in Figures 1 to 5 of Vordtriede appears to coact with "reentrant mortises." If such is in doubt reference to Figures 6 to 8 of this reference illustrates such option. Figure 1 of Vordtriede illustrates structures where four building elements meet that are locked by a key 5 (upper right use of character 5) and structures where such a lock secures meeting members to an intermediate part

of an opposed member (left use of character 5 in Figure 1). We thus conclude that the two references provide a form of lock which would be obvious for use in the relation to hollow wall construction presented by appellant's Figure 5. These references further project the use of such lock parts in connection with such assorted building conformations as corners and partitions * * *."

Appellant emphasizes that London does not employ any keys, but that the stringers therein are sprung together directly by pushing the opposing panels frontally against each other. He further urges that Vordtriede, involving as it does a masonry structure, pertains to an art remote from the art of sheet material structures to which London and the present application relate. Appellant also contends:

"It would be completely unobvious to import keys into LONDON's structure as 'a matter of choice' or 'option' to replace the snapped-together stringers by key-engaging ones such as are nowhere available, and thereby perform a changeover from LONDON's invention of panels assembled by pushing them frontally against each other into a non-equivalent mode of assembly of panels interlocked in standing position by endwise inserted keys; the changeover of LONDON's structure into a greatly more advantageous key-locked one would call for more than ordinary skill, and a person would have to know beforehand what he wants to get in the way of a structure and results, and by what means he is going to get it; in other words, he would have to invent it first."

We are unable to agree with the board that claims 8, 12, 19, 21, 50, 51, 57, 58, 59, 61, 65, 66, 67, 68, 69, 72, 73, 74, 83, 84 and 85 are obvious over the combination of the London and Vordtriede patents. While we recognize the disclosures of the individual features noted by the examiner and board, we are unable to see how either patent would make it obvious to modify the other in such manner as to result in the subject matter recited in the claims. While London discloses panels secured together by formations on stringers, the formations are embodied in flexible material and are brought into engagement by being snapped together by pushing the spaced panels toward each other rather than by sliding movement longitudinally of the formations. While Vordtriede provides mortises in solid bricks for engagement by a separate key, that patent does not fill the gap left in the prior art by the absence of a suggestion of a construction where panels are provided with stringers having rigid formations which are interlocked by relative sliding movement longitudinally of the formations. In the record before us, a suggestion of combining the features necessary to obtain appellant's claimed construction appears to be found only in appellant's own application.

Moreover, additional limitations as to specific features not suggested by the references are found among the claims rejected on art. As examples, neither London nor Vordtriede shows the use of laterally engaging means in addition to the splines or keys for locking the half stringers at the ends of adjoining panels together or suggests the provision of a structural member between opposing stringers with an individual spline or key for each stringer. The board and the examiner merely considered the claims as a group in discussing the art rejection and did not discuss those limitations. Instead, the board seems to have confined its consideration largely to the determination that the references made obvious the "construction presented by appellant's Figure 5," which it found to present the "essential 'species' substance of those claims."

For the foregoing reasons we feel obliged to conclude that the art of record fails to show that the subject matter recited in the claims rejected on the prior art would have been obvious to a person

of ordinary skill at the time the invention was made.

The rejection of claims 21, 50, 51, 57, 58, 59, 61, 69, 72, 73, 83, 84 and 85 as indefinite is grounded on the inclusion therein of expressions such as "spline or splines," appearing in claim 51, for example, "one or more splines," "key or keys" and "mortise or mortises." Concerning that rejection, the board stated:

"* * * We agree with appellant that terms such as 'one or more' or 'key or keys' can sometimes be considered as merely a broadening expression comparable to 'means' when the facts of the structure indicate the options to be equivalent. From the present facts, however, we do not find such a condition to exist. Within the structure at the right of Figure 5 the use of a plurality of keys would appear to introduce options in structure that would change the relationships. For instance if Figure 3 directly thereabove is noted we find a plural key teaching that would lead to separation of the lock member in Figure 5 and result in separation of the wall sections. We see no grounds for holding terms such as 'key or keys' to be equivalent in connection with appellant's preferred embodiment and do not consider it proper to approve the form of claims perpetuating such speculation as to their meaning. * * *"

The board seems to have based its conclusion to a considerable extent on the fact that it found it necessary to speculate as to the meaning of the claims. In referring to the rejection of claims as indefinite, the solicitor stated the board declined to approve such alternative expressions where such could only render interpretation of the claims "more speculative." While the board elsewhere professed "considerable difficulty in determining the significance and scope of the various phrasings" in the claims, and we also find interpretation of some phrases in the claims to present some diffi-

culty, the rejection on indefiniteness appears to be based solely on the alternative expressions referred to above. As employed in this particular case, the questioned expressions do not seem to us to be indefinite or unclear. The term "spline or splines," as used in claim 51, is alternative only to the extent that more than a single spline may be employed, a condition which would obviously exist in the case of a "means" recitation. In referring to the spline or splines as "interlocking said wall means in opposition with one another," the claim specifies a single function or relationship irrespective of whether a "spline" or "splines" are employed; there is no recitation of any alternative relationship or function. Certainly the term complained of does not itself make the claim unclear. It must be noted that the claims have not been rejected as indefinite in any other expressions or as inaccurate in the questioned expressions. The rejection of the specified claims as indefinite, therefore, will not be sustained.

The significance of the rejection of claims 20, 36, 38, 39, 40, 41, 42, 43, 44 and 48 as not reading on the elected species appears to be misunderstood by appellant who refers to such rejection as "a devious act because it fails to state that the rejection is actually *on merits* over the 'right hand end of Fig. 5,' * * *." As pointed out by the solicitor:

"* * *, the rejection of these claims as not readable on the elected species is not a rejection on their merits, but rather a refusal by the examiner to consider them on merits in this application."

In the final rejection, the examiner held those claims, along with claims 10, 22, 23, 62 and 63, to be withdrawn from consideration under Rule 142(b)[3] as not readable on the elected species. However, he noted in his Answer that appellant had contended that claims 20, 36, 38, 39, 40, 41, 42, 43, 44 and 48 are either generic or subgeneric and changed his treatment of them to a rejection as not

3. See footnote 2.

reading on the elected species "in order that applicant may have the right to have this question decided by the Board of Appeals * * *." Thus an affirmance of that rejection would only relegate claims 20, 36, 38, 39, 40, 41, 42, 43, 44 and 48 to the same category as claims 10, 22, 23, 62 and 63.

In his Answer, the examiner discussed the rejection as not reading on the elected species as follows:

"Claim 20 is not considered to read on the elected species because it includes joints between two rows of panels which meet at L and T intersections none of which intersections are shown in the elected species.

"Claim 20 is further considered not readable on the elected species because it calls for 'dual tenon splines telescoped into engagement with said stringer mortises (on juxtaposed stringers) in registry' and then further calls for 'laterally engaging means for locking said stringers in juxtaposition'. Since the dual tenon splines constitute one means for locking said stringers in juxtaposition the latter mentioned means must, of necessity, be an additional means for locking said stringers in juxtaposition such as, for example, the means shown at 45 in Figure 3 or the means shown at 222 and 223 in Figure 19. Since no such additional means are shown in the elected species, and furthermore, since the presence of such additional means is the distinguishing characteristic of an unelected species (such, for example, as that species identified by applicant on page 10 of Paper No. 4 as the "No. 2 species") it is considered that claim 20 clearly does not read on the elected species.

"Claim 36 similarly calls for a spline having a tenon in engagement with adjoining stringers and then also calls for 'means engaging said stringers laterally and locking them to each other in the presence of said spline therein'. Claims 38, 39, 40, 41, 42, 43, 44 and 48, which depend from claim 36, thus have similar limitations therein and, for the same reasons pointed out in the immediately preceding paragraph with respect to claim 20, claims 36, 38, 39, 40, 41, 42, 43, 44 and 48, likewise do not read on the elected species.

"Applicant contends that the phraseology calling for laterally engaging means for locking said stringers in juxtaposition and thereby holding said panels together at the parting line constitutes a generic definition and, when taken by itself, it does. However, when this 'generic definition' is *preceded* by a positive recitation of undercut splines being in engagement with juxtaposed stringers, the 'generic definition' either becomes an additional means or it constitutes a double recitation of the splines previously called for. The only interpretation of claims 20, 36, 38, 39, 40, 41, 42, 43, 44 and 48 which avoids the ambiguity of a double recitation of the aforementioned splines is thus one that renders the claims in question readable on, and only on, an unelected species."

With respect to claims 39 through 43, appellant states in his brief:

"The rejection of claims 39–43 over the right hand end of Fig 5 is an improper and invalid one because these claims recite the species inventions Nos. 1–4, and under Rule 142(b) should have been withdrawn from consideration pending an allowance of a generic claim; their rejection over Fig. 5 lacks legality, logic and rationality; it plainly is a rejection of these claims on their merits over Fig. 5 as an art reference.

\*      \*      \*      \*      \*      \*

" * * * ; rejected also over Fig. 5 were claims 39–43 *by proxy* because of their dependence from claim 36, which rejection is wholly illogical and unfounded because (1) *they recite the non-elected species Nos. 1–4, are not and cannot be readable on*

*the elected species,* \* \* \*." (Emphasis supplied)

Those statements highlight appellant's misunderstanding of the rejection in question. Thus he urges in opposition to the rejection of claims 39 through 43 the very fact that makes the rejection proper, that is, that those claims do not read on the elected species. We agree with the examiner, the board and appellant in that conclusion. The rejection of those claims will be affirmed and the status of the claims allowed to revert to that of claims 10, 22, 23, 62 and 63 which were held withdrawn from consideration as not readable on the elected species.

Appellant appears to take the position that the other claims rejected as not reading on the elected species should have been treated by the examiner on the merits, although the arguments of appellant on that point seem to be somewhat confused because of his apparent misunderstanding of the basis and significance of the rejection as discussed above. Appellant regards the elected species to be his own "No. 5 species," described in his reply to the examiner's requirement for election as follows:[4]

Claims to No. 5 species: 16, 17, 27, 30, 31, 37, 38, 53, 54, 55, 56, 57. or:

It is apparent that the right hand sketch corresponds to the construction "illustrated in the right half of Fig. 5" of appellant's application drawing reproduced hereinabove, which was one of the species which the examiner listed in making his requirement for election.[5] The only difference between the sketch and the right hand half of Fig. 5 appears to be that the former includes a vertical dotted line which the examiner apparently thought might be regarded as indicating that the upper element might be either a full stringer or two half stringers.

After carefully considering all of appellant's arguments on the subject, we are satisfied that claims 20, 36, 38, 44 and 48, as well as claims 39 through 43, cannot properly be read on the elected species for the reasons set forth in the excerpt from the board's opinion quoted above. For example, we think that the recitation in claim 20 of "laterally engaging means for locking said stringers in juxtaposition," clearly requires an element other than the previously recited splines, an element not shown in appellant's "No. 5 species" or in Fig. 5 of the

4. Appellant refused to elect, even provisionally, one of the species expressly designated by the examiner in the requirement for election and thus did not comply with Rule 143 which reads:

143. "Reconsideration of requirement. If the applicant disagrees with the requirement for restriction, he may request reconsideration and withdrawal or modification of the requirement, giving the reasons therefor. (See Rule 111.) In requesting reconsideration the applicant must indicate a provisional election of one invention for prosecution, which invention shall be the one elected in the event the requirement becomes final. The requirement for restriction

will be reconsidered on such request. If the requirement is repeated and made final, the Examiner will at the same time act on the claims to the invention elected."

After appellant's second refusal to comply with that Rule, the examiner stated:

"In order to prevent this case from being considered abandoned, applicant is hereby construed to have elected that species illustrated after the heading 'Claims to No. 5 species' on page 10 of the amendment filed Oct. 13, 1953 (paper No. 4) and the following action is made solely upon that basis: \* \* \*"

5. See footnote 4.

application. That being the only reasonable construction of the language, we do not find In re Kelley, 49 CCPA 1359, 305 F.2d 909, cited by appellant, to indicate any error in the board's position. Claim 36 includes a similar recitation which is not supported by the elected species. Claims 44 and 48, along with claims 39 through 43, are dependent on claim 36 and thereby embody the same limitation.

Appellant apparently finds what he regards as an inconsistency in connection with the rejection as not reading on the elected species. Thus, in referring to claim 20, he argues as follows:

"Nor was explained the anomaly that claim 74 was found to read on the right hand end of Fig. 5, which figure shows no intersections and no panels meeting at non-coincident parting lines; * * *."

However, we have based our consideration of the rejection of claims 20, 36, 38, 39, 40, 41, 42, 43, 44 and 48 on only the question of whether those claims read on the elected species. Since they do not, we could not reverse that rejection on the ground that some claim or claims rejected on the merits, in this case as unpatentable over the prior art or as indefinite, likewise do not read on the elected species. Thus, we have not considered and we make no ruling whether the claims treated on the merits actually read on the elected species. Likewise, the matter of whether any or all of the claims rejected as not reading on the elected species become allowable in this application as the result of our reversal of the rejection of the claims treated on the merits is not before us and has not been considered.

■ We are also asked by appellant to review the board's action declining to review the examiner's refusal to enter amendments proposed after the examiner's Answer was submitted. As pointed out by the board, the entry or non-entry of amendments is a procedural matter outside its jurisdiction. As such, the matter obviously is not subject to review by us.

■ The rejection of claims 8, 12, 19, 21, 50, 51, 57, 58, 59, 61, 65, 66, 67, 68, 69, 72, 73, 74, 83, 84 and 85 are *reversed*. The rejection of claims 20, 36, 38, 39, 40, 41, 42, 43, 44 and 48 as not reading on the elected species is affirmed.