57 CCPA

**Application of Scott SEARLES, Jr.**
**Patent Appeal No. 8211.**

United States Court of Customs and Patent Appeals.
March 5, 1970.

Dos T. Hatfield, Washington, D. C., attorney of record, for appellant, Thomas W. Underhill, Boston, of counsel.

Joseph Schimmel, Washington, D. C., for Commissioner of Patents, S. Wm. Cochran, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, LANE, Judges, and MATTHEWS, Senior Judge, United States District Court for the District of Columbia, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, sustaining the final rejection of all claims in appellant's application.[1]

The invention defined by the appealed claims relates to a method for making cyclic mono-sulfides, such as ethylene sulfide, which comprises heating an alkali or alkaline earth metal thiocyanate salt with a cyclic carbonate of certain diols. Since the issues to be decided in this appeal do not require it, the invention will not be explained in more detail.

The claims were finally rejected under 35 U.S.C. § 102(a) as being unpatentable over an article published in the Journal of the American Chemical Society and co-authored by appellant and one Eugene F. Lutz. Appellant does not dispute that the reference discloses the subject matter claimed. The questions brought here on appeal arose from appellant's attempts to remove the reference as prior art.

Appellant initially attempted to remove the reference by filing an affidavit swearing that Lutz was, at the time of the invention, a paid research assistant to appellant, that the work was carried out by Lutz, but at the suggestion and direction of appellant, and that Lutz's name was added to the article "merely as a matter of academic courtesy." This was deemed insufficient by

---

1. Serial No. 284,393, filed May 31, 1963 for a "Method for Making Small-Ring Cyclic Sulfides", asserted to be a continuation-in-part of an earlier application filed June 16, 1959, Serial No. 820,575.

the examiner, who ruled[2] that a disclaiming affidavit by the co-author would be necessary to overcome the rejection.

The propriety of the examiner's action in refusing to give the desired effect to the initial affidavit thereafter became moot, however, and is therefore not before us. It seems that in attempting to pursue the examiner's requirement, appellant's attorney became apprised of facts which made him decide to convert the application to a joint one with appellant and Lutz as co-applicants. In a display of commendable candor, these facts were explicitly stated in the "Verified Statement of Facts" filed, in accordance with Patent Office Rule 45(c),[3] with the request to amend the application to include Lutz as a joint inventor.

In summary, the facts alleged were as follows:

1. In 1958 Lutz was a graduate student working under the direction of Searles on a program designed to produce small-ring cyclic ethers (not cyclic sulfides, the eventual product).

2. Potassium propionate had been used as a catalyst in reactions in the program. One of the reactants in the program suggested by appellant was the cyclic carbonate of a diol specified in the claims. As a substitute for potassium propionate appellant suggested use of a "lower melting-point salt." The new reaction was to be carried out under conditions selected by appellant as part of the program to produce cyclic ethers. Potassium thiocyanate was thereafter substituted for the potassium propionate.

3. Appellant and Lutz are in disagreement as to who proposed specifically the use of potassium thiocyanate, each claiming that he and not the other made the proposal.

4. Lutz recollects that, upon carrying out the reaction using potassium thiocyanate and before talking to appellant, he suspected the formation of the cyclic sulfide.

5. When appellant came to the laboratory Lutz called attention to the odor of the product and the fact that it did not have the boiling point of the desired cyclic ether. Appellant recollects that he then recognized the probable production of a sulfide and predicted the mechanism and generality of the reaction.

6. Appellant, when he filed the parent application and the present application, believed himself to be the sole inventor of the invention disclosed in the article.

The requested conversion of the application was refused by the examiner who stated "[t]he deficiency resulting in the denial is considered to rest in the 'Verified Statement of Facts'. * * *" His reasoning was articulated later in the Examiner's Answer, when, denying that he was making an "ex parte determination of inventorship", the examiner took the position that the facts presented were not sufficient to warrant a conclusion that Searles was not the sole inventor and that Searles and Lutz were joint inventors. The rejection over the joint publication was continued.

Before filing his brief to the Board of Appeals, appellant filed a petition to the Commissioner wherein he asked that the examiner be directed to enter the proferred papers, thus allowing conversion of the application, or, in the alternative, to make a positive determination that ei-

2. The examiner considered himself bound, in this respect by the decisions in Ex parte Magner, 133 USPQ 404 (1961), Ex parte Hirschler, 110 USPQ 384 (1952), and the provision in the Manual of Patent Examining Procedure, section 715.01(c). But see Ex parte Seaborg, 131 USPQ 202 (1960).

3. (c) If an application for patent has been made through error and without any de-

ceptive intention by less than all the actual joint inventors, the application may be amended to include all the joint inventors upon filing a statement of the facts verified by, and an oath or declaration as required by rule 65 executed by, all the actual joint inventors, provided the amendment is diligently made. Such amendment must have the written consent of any assignee.

ther Searles or Lutz was a sole inventor. His reasoning appears to have been that either action would serve the same purpose in clarifying the issues and paving the way to the removal of the reference as prior art and obtaining the grant of a patent to someone. The Commissioner, however, dismissed the petition, refusing to rule on the question "since it is determinative of the rejection made, [and] is thus appropriate for consideration on appeal to the Board of Appeals rather than by petition." [4]

The board, in its decision on the appeal, specifically declared:

> The question here is solely one of whether applicant has sufficiently complied with the provisions of 35 USC 116 [5] and Rule 45(c) to entitle him to convert this application to a joint one with Lutz and hence, through the parent application, to dispose of their joint publication as a reference.

It then went on to analyze the requirements of the statute and rules regarding the inclusion in an application of an omitted joint inventor. Agreeing with the examiner that the facts were dubious regarding error in determining inventorship, the board concluded

> on the facts before us the Examiner's holding denying the entry of the conversion amendment and rejecting on the point publication must be sustained.

We are thus presented with the anomalous situation that the only rejection of record is not contested by appellant and nothing presently in the official file of the application may be used to obviate that rejection. On this appeal the court is asked to rule on the propriety of the examiner's refusal to permit entry of an amendment into the official file record. We note that traditionally, such actions being considered procedural, rather than substantive, recourse was available only through petition to the Commissioner of Patents,[6] review of his decision being possible by means of civil action. See, In re Pavlecka, 319 F.2d 180, 50 CCPA 1342 (1963). Here, however, the Commissioner has decided, and a majority [7] of the board of appeals agreed, that because the question involved is "determinative of the rejection" it is properly an

---

4. We are deprived of an analysis of the Commissioner's further reasons, if any, for so holding since neither the petition nor the Commissioner's decision thereon are in the record. The language quoted in the text is taken from the board's opinion which ascribed it to the Commissioner.

5. The pertinent provision of 35 U.S.C. § 116 is the third paragraph, which states:
Whenever a person is joined in an application for patent as joint inventor through error, or a joint inventor is not included in an application through error, and such error arose without any deceptive intention on his part, the Commissioner may permit the application to be amended accordingly, under such terms as he prescribes.

6. Indeed, Patent Office Rule 127 provides:
From the refusal of the primary examiner to admit an amendment, in whole or in part, a petition will lie to the Commissioner under rule 181.
Rule 181 provides in pertinent part:
(a) Petition may be taken to the Commissioner (1) from any action or requirement of any examiner in the ex

parte prosecution of an application which is not subject to appeal to the Board of Appeals or to the court; (2) in cases in which a statute or the rules specify that the matter is to be determined directly by or reviewed by the Commissioner; and (3) to invoke the supervisory authority of the Commissioner in appropriate circumstances.

7. It should be pointed out that Examiner-in-Chief Lidoff concurred specially in the board's decision in this case. Stating initially that he agreed with the conclusions of the majority otherwise, Mr. Lidoff went on to say:
It is my opinion that under the provisions of the last sentence in Rule 191(c) [1] the issue as to compliance with the requirements of Rule 45(c) should have been settled upon petition prior to this appeal.
[Rule 191 is entitled "Appeal to Board of Appeals." The last sentence in paragraph (c) of the rule reads: "Questions relating to matters not affecting the merits of the invention may be required to be settled before an appeal can be considered."]

appealable matter. These unusual circumstances raise a question concerning this court's jurisdiction to hear the appeal and compel comment on this particular aspect of the proceedings.

■ Ordinarily, there is no problem regarding the manner in which the Patent Office appellate tribunals divide their authority. Decisions of the examiner directly relating to the rejection of claims are subject to appeal. These questions generally deal with the merits of the invention, involving factual determinations and the legal conclusions drawn therefrom regarding the application disclosure, the claims and the prior art. The examiner's rulings dealing with procedural matters, such as whether an affidavit or amendment is untimely, and formal requirements, such as whether a new application title will be required, are reviewable upon petition. However, the facts of this case point out that the dividing line between the two is often a blurry one.

■ The issues required to be determined on this appeal clearly do not relate "to matters * * * affecting the merits of the invention * * *" (Rule 191(c), footnote 7, *supra*). Rather, the decision of the examiner which was appealed from was a denial of a request "that this application be amended to include Eugene F. Lutz as a joint inventor" (see Rule 127, footnote 6, *supra*). Nevertheless, we have concluded that this appeal from the decision of the Board of Appeals is properly within the jurisdiction of this court under 35 U.S. C. § 141.[8] This is not, however, *merely* because the issues are "determinative of the rejection." As Examiner-in-Chief Lidoff correctly pointed out in his concurring opinion, an examiner's refusal to allow entry of an amendment to the claims or to consider an affidavit under Rule 131, which might also clearly be

"determinative of the rejection", is reviewable only by petition and will not be considered by the Board of Appeals. In this case, the examiner's decision refusing to permit the conversion of the application to a joint one additionally, and necessarily, required the exercise of technical skill and legal judgment in order to evaluate the facts presented, interpret the requirements of 35 U.S.C. § 116 and Rule 45 and weigh the facts against those requirements. His decision was, thus, such an "adverse decision" as to be properly reviewable by the Board of Appeals under 35 U.S.C. § 7.

Having made these preliminary observations, we now consider the merits of the appeal. This requires a more detailed analysis of positions taken by the Patent Office during the prosecution of the application before us.

In denying the requested conversion, the examiner's position appears to have been that, because of the disagreement between Searles and Lutz as to who suggested the use of potassium thiocyanate, and because of certain alleged inconsistencies between this application and the parent, "a preponderance of the evidence" did not warrant the conclusion that Searles was not the sole inventor and that Searles and Lutz were co-inventors of the subject matter claimed.[9]

The Board of Appeals, after summarizing the history of the prosecution of the case and stating the issue before it (as stated above), set out as what it saw to be the requirements for the conversion of a sole to a joint application under 35 U.S.C. § 116 that:

1. there be an "error" in not including a joint inventor;

2. "such error arose without deceptive intention" on the part of the joint inventor not included * *;

---

8. *Cf.*, Sundback v. Blair, 47 F.2d 378, 18 CCPA 1016 (1931).

9. Probably in an attempt to justify the apparent inconsistency between the refusal to permit conversion of the application and the maintenance of the rejection based on the joint publication, the examiner stated in his Answer: "Applicant is incorrect in the assumption that the rejection is grounded on an attempted ex parte determination of inventorship."

3. the amendment be under such terms as the Commissioner prescribes.

Applying these requirements to the facts of this case, the board first specifically reversed "that aspect of the Examiner's position that would appear to hold that the mere fact of a disagreement as to who first suggested a detail of the invention defeats a claim to joint inventorship." As to point (2), the board decided that an allegation of lack of deceptive intention on the part of Lutz would be "a material allegation in any verified statement of facts under Rule 45(c)." The Commissioner's terms of requirement (3) were stated by the board as being prescribed in Rule 45(c) thusly:

a—"filing a statement of the facts verified by * * * all the actual joint inventors";

b. "filing * * * an oath or declaration as required by rule 65 executed by, all the actual joint inventors";

c—that "the amendment is diligently made";

d—that the amendment "have the written consent of any assignee".

The board noted that while points (a), (c) and (d) were apparently satisfied, the oath which Searles and Lutz submitted with the request to convert the application, contained the statement, "we are the original, first and *sole* inventors" (emphasis board's). Finding this statement "inconsistent with the attempt to amend the application to one of their *joint* inventorship", (emphasis board's), the board went on to assert that it was not inadvertent, since the other papers submitted by the parties were either silent with respect to joint inventorship or "very carefully worded to omit" any allegation that they were joint inventors. It was then concluded that the examiner was correct in finding that the facts presented "fail to support an error in inventorship", and his holding "denying the entry of the conversion amendment" was sustained.

In defending the positions of the examiner and board, the solicitor would have us go further and rule that the evidence submitted by appellant lacks a showing of any activity which can be regarded as constituting joint inventorship. It is apparently contended that the claimed invention was either arrived at *independently* by *each* party (if each party's assertion that he selected the key reactant, potassium thiocyanate, is accepted), or by only one party (if only his assertion is accepted), but in any event there was no joint inventorship since the parties did not "unite in the invention of something essential."

 We have concluded that the board was in error in sustaining the examiner's holding denying conversion of the application. Considering first the argument of the solicitor, we disagree that the evidence submitted will not support a conclusion that Searles and Lutz were joint inventors. We note that appellant has argued that he and Lutz did contribute "jointly to an essential element of the invention, i. e., recognition of the unexpected result." The solicitor has, we feel, inadequately controverted this position. In addition, we agree with the board that the mere fact of a disagreement between the parties as to who suggested or performed or discovered one detail of the invention does not defeat a claim to joint inventorship. But there is a further factor in this case which the solicitor's argument appears to ignore and which was never questioned by either the examiner or the board. The evidence submitted shows that, at the time of the invention, Lutz was a graduate student working under the direction of Searles. It is indicated that the suggestion to deviate from the original program came from Searles. Thus, at least some of Lutz's activity in connection with the experiment which produced the new result was attributable to Searles. While not always determinative of the question of joint inventorship, the parties' relationship to one another ought to be taken into consideration concerning the issue

of independent invention. We think that the relationship in evidence here militates against the solicitor's assertion of possible double, but independent, invention.

■ With regard to the positions of the examiner and the Board of Appeals we make these observations: The third paragraph of 35 USC 116 contains no provision requiring that joint inventorship be conclusively proved before conversion of the application will be permitted. The requirements of the statute and Rule 45(c) will ordinarily be satisfied if an allegation of joint inventorship is made, coupled with sufficient evidence to enable a determination regarding the *facts* of error in not including one or more inventors in the application, and the lack of deceptive intent.

■ Even absent a specific allegation of joint invention, it would be enough if the preponderance of the evidence submitted pointed in the direction of joint inventorship, so long as the existence of error without deceptive intention is satisfactorily demonstrated. Looking at the evidence in this case, we consider that the parties have satisfactorily shown that there was error in not including Mr. Lutz in the original application for patent.

■ Regarding the question of "deceptive intention" on the part of the inventor to be added,[10] we specifically disapprove of the board's suggestion that an *allegation* of lack of such intent be required or even necessary in a verified statement of facts. Again, it will be enough to satisfy the statute if it would be reasonable to conclude from a consideration of *all* the facts presented that *any* deceptive intent was absent. In this case such is clearly true. The facts presented, particularly regarding the relationship between the parties and the disagreement as to who suggested the po-

tassium thiocyanate, show the existence of deceptive intention, on either person's part, to be highly unlikely. The statute requires no more and Rule 45(c) adds nothing in this regard.

There remains only the board's discussion concerning the oath first submitted by appellant and Lutz. In the first place, we see, in the filing of this oath, no indication of a conscious effort on the part of Searles and Lutz to avoid calling themselves joint inventors. The remainder of the oath, and the petition are worded in such a manner as to make it obvious that the use of the word "sole" rather than "joint" was inadvertent. All pronouns used are plural, and even the word "inventors" which is modified by "sole" appears as the plural. Secondly, we note that, while Rule 65 requires every applicant to state "whether he is a sole or a joint inventor of the invention claimed", the section of the statute upon which that rule is based, 35 U.S.C. § 115, merely requires an averment by the applicant that "he believes himself to be the original and first inventor". In certain situations, for example where only part of an inventive entity files for a patent, we can see where it might be appropriate for the oath to contain a statement that the applicant is a *joint* inventor. However, in circumstances such as appeared in this case, we consider it less than fair that the oath be considered by the Patent Office as defective or equivocal.

The board in this case specifically disagreed with the examiner's assertion that there were unexplained inconsistencies between the parent case and the application before us. Also, as pointed out earlier, the board disagreed with the examiner's position that the *mere* fact of disagreement as to who first suggested an element of the invention defeats a claim to joint inventorship. Thus having decided that the position of the exam-

---

10. Appellant would have us construe the language in 35 U.S.C. § 116 in such a manner that no showing of lack of deceptive intent on the part of the inventor sought to be joined is required, arguing that to do otherwise would be inconsistent with reason. While we see merit in his contentions, there is no need, in this case, to make such an interpretation.

iner was untenable, the board went on and pointed out what it considered additional factors which, when coupled with the fact of disagreement between the parties asserting joint inventorship, made the examiner's position sustainable. This court has now determined that the board was in error in so doing, and that the conversion should have been permitted. Nevertheless, in the absence of such conversion, there is no question that the rejection of the claims of the single applicant, Searles, over the joint publication was proper. That rejection must therefore be, technically, affirmed. However, the case is remanded with instructions to proceed in a manner not inconsistent with this opinion.

Affirmed and remanded.